# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOHN SLOAN,                     )

                               )     Civil Action No. 2: 16-cv-1182

        Plaintiff,         )

                               )

          v.             )

                               )     United States District Judge

PA DEPT. OF CORRECTIONS, SCI-    )     Nora Barry Fischer

MERCER, SUPERINTENDENT      )

THOMPSON, CAPT. SULLENBERGER, )

MR. BOGGS, MR. BROMLEY,      )

MR. DELLORSO, MS. BOAL,[1] MR.    )     United States Magistrate Judge

WOODS, MS. ENGSTROM, CORRECT )     Cynthia Reed Eddy

CARE SOLUTIONS,              )

MR. RICHARD ELLERS, DR. SCOTT  )

SCOTT MORGAN, AND MS. KAREN  )

FEATHER,                     )

                               )

        Defendants.      )

## REPORT AND RECOMMENDATION

## I.    RECOMMENDATION

Before the Court are the motions to dismiss Plaintiff's Amended Complaint filed by the PA Dept. of Corrections, SCI-Mercer, Superintendent Thompson, Capt. Sullenberger, Mr. Boggs, Mr. Bromley, Mr. Dellorso, Ms. Boal,[1] Mr. Woods, and Ms. Engstrom (collectively "the DOC Defendants") (ECF No. 39) and Correct Care Solutions, Richard Ellers, Karen Feather, and Dr. Scott Morgan (collectively "the Medical Defendants"). (ECF No. 42).

After careful consideration of the parties' submissions, in light of the standards governing motions to dismiss set forth by the United States Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009), and as articulated in

---

[1] Although Ms. Boal is named in the caption, there is absolutely no reference to her in the factual allegations of the Amended Complaint. Therefore, it is recommended that Ms. Boal be dismissed sua sponte for failure to state a claim.

United States Court of Appeals Third Circuit precedent, *see, e.g., Connelly v. Lane Const. Corp.,* 809 F.3d 780, 790 (3d Cir. 2016), and for the following reasons, it is respectfully submitted that both motions be granted in part and denied in part.

## II.    REPORT

### A.    Procedural Background

Plaintiff John Sloan ("Plaintiff" or "Sloan") is a state prisoner in the custody of the Pennsylvania Department of Corrections ("DOC") currently confined at the State Correctional Institution at Mercer ("SCI-Mercer").  On or about August 5, 2016,  Plaintiff submitted a civil rights complaint accompanied by a motion to proceed *in forma pauperis.* The motion was granted and the Complaint duly filed on August 8, 2016. (ECF No. 3).  Thereafter, the DOC Defendants and the Medical Defendants filed motions to dismiss.  (ECF Nos. 28 and 30).  In response, Plaintiff filed an Amended Complaint (ECF No. 36), which remains his operative pleading.

The Amended Complaint brings a myriad of claims, all arising from injuries Plaintiff sustained on August 8, 2014, while removing a man hole cover as part of his work assignment on a SCI-Mercer maintenance crew. Presently pending are the Defendants' motions to dismiss contending that the Amended Complaint should be dismissed for failure to state a claim.

### B.    Factual Background

For purposes of resolving the pending motions, the following facts are as alleged in the amended complaint, viewed in the light most favorable to Plaintiff, and liberally construed. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008); *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972).

On April 8, 2014, Plaintiff held a position with the inmate electrical maintenance crew. Because the general maintenance crew #24, supervised by Defendant Dellorso, was short handed, Plaintiff, along with two other prisoners assigned to the electrical maintenance crew, was temporarily assigned to the general maintenance crew #24.

While removing a man hole cover, Plaintiff was injured when the steel cover fell on his foot. Plaintiff sustained multiple fractures to his left hallux, or big toe. He was removed from the job site via a medical cart, examined by the SCI-Mercer infirmary staff, and then transported to the Emergency Room at Sharon Regional Hospital for x-rays and treatment. He was prescribed medication for pain, issued a surgical boot, and placed under the care of orthopedic specialist, Dr. Matthew Stonestreet, who advised Plaintiff that the type of fracture he had was not likely to heal adequately without proper treatment.

On two occasions – August 18, 2014 and September 16, 2014 - Plaintiff was transported to Dr. Stonestreet's private practice for follow-up examinations. During the September visit, Plaintiff's toe was again x-rayed and Dr. Stonestreet told Plaintiff that the fracture still had not healed. Plaintiff was given an appointment for a follow up examination and a schedule to outline treatment options, which did not exclude surgery.

Upon returning to SCI-Mercer, Plaintiff was advised by a corrections officer that the Medical Administrator and the Facility Security Captain had determined that he no longer would be treated by Dr. Stonestreet, but would be treated by Dr. Scott Morgan, the staff doctor at SCI-Mercer. (ECF No. 36, at ¶ 33). The following month, on October 17, 2014, Plaintiff was examined by Dr. Morgan and had x-rays taken of his fractured toe. The x-rays showed that no changes had occurred since the prior images were taken; the toe still was fractured.

Dr. Morgan prescribed Plaintiff a pair of orthopedic shoes, but after four weeks of waiting for the shoes, Plaintiff was told that due to an administrative denial, either through Defendant Correct Care Solutions alone, or in tandem with SCI-Mercer, he would not be issued orthopedic shoes. Thereafter, Defendant Feather issued Plaintiff a pair of gel inserts, stating "this is all we can give you." *Id.,* ¶ 34. Combined with his state issued boots, the gel inserts caused Plaintiff substantial pain. Plaintiff tried to alleviate the constant pain he was in by purchasing boots from the commissary, but the boots did not alleviate Plaintiff's pain. Although Plaintiff still was in pain, the SCI-Mercer medical department cleared Plaintiff to return to his assignment with the electrical maintenance crew. *Id.*, ¶ 36.

The Amended Complaint states that Plaintiff has communicated to Dr. Morgan on numerous occasions that he is experiencing nearly constant pain and discomfort, especially when he is required to wear the state issued footwear (boots) or when he must stand for prolonged periods of time. *Id.*, ¶ 56. According to the Amended Compliant, Dr. Morgan has ignored Plaintiff's pleas and has willfully refused to insist that the prescribed orthopedic shoes be given to Plaintiff. *Id.*

In 2015, Plaintiff brought a lawsuit in the Court of Common Pleas of Mercer County, Pennsylvania, No. 2015-1699, against many of the same defendants named in the instant federal case, seeking monetary compensation for the injuries arising out of the follow-up care and secondary treatment of his toe.[2] *See* ECF No. 43-1. Plaintiff alleges that on July 6, 2015, immediately after service was effected on the defendants, he was "fired" from his position in the electrical maintenance department. *See* Pl's Br. at 6 and Amended Complaint at ¶ 37.

---

[2] Plaintiff apparently filed a second case in Mercer County, Civil Action 2016-0014, but as a copy of that Complaint is not in the present record the Court is not aware of the identities of the named parties or the allegations of the complaint. *See* Pl's Br. at 12.

On August 5, 2016, the instant case was initiated when Plaintiff submitted a civil rights complaint accompanied by a motion to proceed *in forma pauperis.*

C.    Discussion

Distilled to its essence, the Amended Complaint includes the following claims: (i) a § 1983 conspiracy claim against all defendants, (ii) a Fourteenth Amendment due process claim against all defendants, (iii) Eighth Amendment claims against the DOC Defendants for alleged failure to provide Plaintiff with a safe working environment, including failure to train and supervise; (iv) a First Amendment claim against the DOC Defendants alleging retaliatory termination of his employment; (v) Eighth Amendment deliberate indifference claims against the Medical Defendants regarding the follow-up care and secondary treatment of his to; and (vi) medical malpractice claims under state law against the Medical Defendants.

To successfully state a claim against any of the defendants for a violation of his constitutional rights pursuant to 42 U.S.C. §1983, Plaintiff must allege that: (1) the conduct complained of was committed by a person acting under color of state law; and, (2) the conduct complained of deprived Plaintiff of rights, privileges, or immunities secured by the laws or the Constitution of the United States.  *See Rehberg v. Paulk*, 566 U.S. 356, 361 (2012).  Plaintiff's claims will be addressed seriatim.

1.    *Conspiracy Claim Against All Defendants*

Plaintiff's First Cause of Action appears to be a § 1983 conspiracy claim against all named defendants.  *See* Amended Complaint, at ¶¶39 – 42. ("The Defendants, acting in concert, under color of law, violated Sloan's Constitutional Rights guaranteed to him by the Eighth and Fourteenth Amendments.") Neither the DOC Defendants nor the Medical Defendants challenge

the conspiracy claim in their motions to dismiss. Therefore, the claim is not addressed in this report and recommendation.

2.    *A Fourteenth Amendment Due Process Claim Against All Defendants[3]*

Assuming *arguendo*, that Plaintiff's First Cause of Action also brings a separate due process claim, the Medical Defendants argue that Plaintiff is attempting to raise substantive due process claims and he is barred from doing so by the doctrine set forth in *Albright v. Oliver*, 510 U.S. 266 (1994), and *Graham v. Connor*, 490 U.S. 386 (1989), that "limit[s] the availability of claims under substantive due process to those that are not covered by other amendments."

In response, Plaintiff first argues that his due process claim "arises out of the denial of adequate medical treatment and inadequate procedural processes," and cites, in support thereof, *Griffin v. Vaughn*, 112 F.3d 703 (3d Cir. 1997), a procedural due process case, and *Sandin v. Conner*, 515 U.S. 474 (1995).   Plaintiff further argues that the administration of the Medical Defendants and its employees, and the policies, or lack of policies, "created an oppressive environment" and cites *Collins v. Harker Heights, Tex.*, 503 U.S. 115, 126 (1992), a substantive due process case, for the legal proposition that "[t]he cornerstone of the Constitution's Due Process Clause is that government officials should not be allowed to abuse their power or employ it as an instrument of oppression."  ECF No. 47 at 12.

Thus, it is not clear whether Plaintiff is alleging procedural or substantive due process claims. Assuming Plaintiff is attempting to plead a procedural due process claim, the Court finds that Plaintiff has not alleged facts to support that he had a state created liberty interest which entitled him to procedural due process protection or that he was deprived of a state created liberty interest as a result of conduct undertaken by any of the defendants.  Therefore, Plaintiff

---

[3]    Only the Medical Defendants addressed this claim; however, the analysis is applicable to both the Medical Defendants and the DOC Defendants.

has failed to state a plausible § 1983 claim against any of the Defendants for violation of his procedural due process rights under the Fourteenth Amendment.

Assuming in the alternative that Plaintiff is attempting to plead a substantive due process claim, the constitutional violations alleged in Plaintiff's Amended Complaint are a failure to provide a safe working environment against the DOC Defendants and deliberate indifference to Plaintiff's serous medical needs against the Medical Defendants, conduct that falls within the protection of the Eighth Amendment. "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims'." *Albright*, 510 U.S. at 273 (quoting *Graham*, 490 U.S. at 395). *See also Kapp v. Wetzel*, 2017 WL 1927731, at *3 (W.D. Pa. May 10, 2017) (same). Therefore, Plaintiff's constitutional violation claims are properly evaluated under the Eighth Amendment, and not as a Fourteenth Amendment substantive due process claim.

For all these reasons, it is recommended that Plaintiff's Fourteenth Amendment claims be dismissed and leave to amend be denied as any such amendment would be futile.

3.      *The DOC Defendants*

The Amended Complaint sets forth violations of Plaintiff's constitutional rights under the First and Eighth Amendments in connection with the DOC Defendants' alleged failure to provide a safe working environment and the alleged retaliatory termination of his employment. The Court will address the DOC Defendants individually seriatim.

a.      *SCI-Mercer and the Pennsylvania Department of Corrections*

As correctly noted by the DOC Defendants, the Eleventh Amendment bars suits against a state in federal court by private parties. *Laskari v. Thornburgh,* 661 F.2d 23, 25 (3d Cir. 1981)

(citing *Alabama v. Pugh*, 438 U.S. 781 (1978)). "Unless a State has waived its Eleventh Amendment immunity or Congress has overridden it . . . a State cannot be sued directly in its own name regardless of the relief sought." *Kentucky v. Graham,* 473 U.S. 159, 167 n.14 (1985) (*citing Pugh*, 438 U.S. at 781)). Eleventh Amendment immunity protects entities created by state governments that operate as alter egos or arms of the State. *See Lake Country Estates v. Tahoe Reg'l Planning Agency,* 440 U.S. 391, 402 (1979). The United States Supreme Court has held that a § 1983 action brought against a "State and its Board of Corrections is barred by the Eleventh Amendment unless [the State] has consented to the filing of such a suit." *Pugh*, 438 U.S. at 782. The Commonwealth of Pennsylvania has specifically reserved its right to immunity from suit in federal court pursuant to the Eleventh Amendment. 42 Pa. Cons. Stat. § 8521(b) ("Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to Constitution of the United States.") Moreover, the United States Supreme Court has held that a § 1983 does not override a State's Eleventh Amendment immunity. *Quern v. Jordan*, 440 U.S. 332, 342 (1979).

It is well settled that the DOC is an agency of the State and, therefore, is entitled to the same Eleventh Amendment immunity which the Commonwealth enjoys. Similarly, SCI-Mercer enjoys immunity as well. Moreover, neither the DOC, as an agency of the state, nor SCI-Mercer is a "person" for purposes of § 1983 and therefore may not be sued under the civil rights statute. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

Furthermore, to the extent that Plaintiff is attempting to bring a claim under *Monell v. Dep't of Social Services,* 436 U.S. 658 (1978), against the DOC and SCI-Mercer, such a claim is not cognizable as both these entities are state agencies. *See Fifth Cause of Action, Amended*

*Complaint, ¶¶ 63-64.* "*Monell* stands for the proposition that local governments are not liable under § 1983 for the acts of their employees unless those acts were taken pursuant to a policy or custom of the municipality." *Sims v. City of Phila.,* 552 F. App'x 175, 177 (3d Cir. 2014) (citing *Monell,* 436 U.S. at 694). "*Monell* was 'limited to local government units which are not considered part of the State for Eleventh Amendment purposes . . . .'" *Quern,* 440 U.S. at 358 (quoting *Monell,* 436 U.S. at 690 n.54).

For all these reasons, it is recommended that the DOC Defendants' motion to dismiss Plaintiff's claims against the DOC and SCI-Mercer be granted and leave to amend be denied as any such amendment would be futile.

      b.    *Eighth Amendment Claims*

The DOC Defendants argue that the claims against them should be dismissed as they hold supervisory roles and Plaintiff has failed to provide any facts in support of his claims that they were personally involved in the events giving rise to this lawsuit.

It is clear that liability may not be imposed under § 1983 on the traditional standards of *respondeat superior*. *Capone v. Marinelli,* 868 F.2d 102, 106 (3d Cir. 1989). "Supervisory personnel are liable for the § 1983 violations of their subordinates if they knew of, participated in or acquiesced in such conduct." *Id*. at 106 n.7.

Under § 1983, there are only two avenues for supervisor liability. First, if the supervisor "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the constitutional harm[,]" *Barkes v. First Corr. Med., Inc*., 766 F.3d 307, 316 (3d Cir. 2014) (citations omitted), *rev'd sub nom on other grounds by Taylor v. Barkes,* 135 S. Ct. 2042 (2015), or, second, if the supervisor "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of

and acquiesced in the subordinate's unconstitutional conduct." *Id.* (citations and quotation marks omitted). However, with respect to the first avenue of liability, a conclusory, vague, and speculative allegation of custom, policy or practice is insufficient under *Twombly* and *Iqbal.* "'Failure to' claims – failure to train, failure to discipline, or . . . failure to supervise – are generally considered a subcategory of policy or practice liability." *Id.* at 316.

      1.    Superintendent Thompson,[4] Deputy Superintendent Woods, and Captain Sullenberger

According to the Amended Complaint, Superintendent Thompson "is responsible for reviewing all Administrative Appeals of Grievances filed by inmates within the Institution," Deputy Superintendent Woods is "responsible for overseeing services dealing with maintenance and ensuring that Administrative Procedures are followed by all employees of SCI Mercer," and Captain Sullenberger is the Security Captain responsible for overseeing security at SCI-Mercer. (Amended Complaint, ¶¶ 7-9, inclusive).

Plaintiff did not address Defendants' arguments with respect to Superintendent Thompson, Deputy Superintendent Woods, and/or Captain Sullenberger in his response to the DOC Defendants' motion to dismiss. As such, the Court finds that Plaintiff implicitly concedes that the Amended Complaint fails to state a claim against Superintendent Thompson,[5] Deputy Superintendent Woods, and/or Captain Sullenberger.

---

[4]    The Amended Complaint also states that Superintendent Thompson wrongfully retaliated against Plaintiff when he failed to intervene when Plaintiff's employment was wrongfully terminated. This claim is discussed *infra.*

[5]    Paragraph 7 of the Amended Complaint states that Superintendent Thompson is responsible for reviewing all administrative appeals of grievances. However, the Amended Complaint contains no allegations that through any grievances filed by Plaintiff was Superintendent Thompson made aware of any alleged ongoing constitutional violation. *See, e.g., Whitehead v. Rozum,* No. 11-102, 2012 WL 4378193 at *2 (W.D.Pa. Aug. 7, 2012) ("In the prison setting, where a grievance alleges an ongoing constitutional violation, a supervisory

Moreover, even under the liberal standard of interpretation for *pro se* pleadings, the Court discerns no allegations in the amended complaint that Superintendent Thompson, Deputy Superintendent Woods, and/or Captain Sullenberger had personal involvement in any conduct which allegedly violated Plaintiff's constitutional rights. Thus, the Court agrees with the DOC Defendants that the Amended Complaint does not allege sufficient facts to give rise to supervisory liability against Superintendent Thompson, Deputy Superintendent Woods, and/or Captain Sullenberger. Accordingly, it is recommended that the motion to dismiss Plaintiff's Eighth Amendment claims against Superintendent Thompson, Deputy Superintendent Woods, and Captain Sullenberger be granted and leave to amend be denied due to Plaintiff conceding that these claims are not properly before the Court.

2.      Mr. Bromley, Mr. Boggs, and Mr. Dellorso

Defendant Bromley is alleged to be responsible for the safe management of all maintenance undertaken within SCI-Mercer; Defendant Boggs is alleged to be responsible for supplying and proper instruction of tools, equipment, and techniques for the entire maintenance department at SCI-Mercer; and Defendant Dellorso is alleged to be responsible for the training of inmates assigned to maintenance crew #24. (Amended Complaint, at ¶¶ 10-12, inclusive).

The Court finds that the amended complaint sufficiently alleges personal involvement with respect to these three defendants. Plaintiff contends that he was not provided the proper tool or equipment to lift off a manhole cover, that he was not provided the proper personal protective equipment, and that he was not provided adequate training to properly remove a

—

defendant who reviews it is personally involved in that violation because he is confronted with a situation he can remedy directly.") (citations omitted*), report and recommendation adopted by*, 2012 WL 4370929 (W.D.Pa. Sept. 24, 2012). In fact, the Amended Complaint makes no reference at all to the administrative process other than to state that Plaintiff "has exhausted his administrative remedies with respect to all claims and all defendants." *See* Amended Complaint, ¶ 38. (ECF No. 36).

manhole cover. Of course, discovery will likely reveal the extent to which these Defendants had personal involvement or knowledge of the facts which Plaintiff alleges. However, at this point of the litigation, when all factual assertions are viewed in the light most favorable to the non-moving party, the Court recommends that Plaintiff's Eighth Amendment claims against Defendants Bromley, Boggs, and Dellorso not be dismissed but rather these claims should proceed to discovery.

c. *First Amendment Retaliation Claim*

To state a claim for retaliation, a prisoner must allege that: (i) he was engaged in constitutionally protected conduct, (ii) he suffered some adverse action at the hands of prison officials, and (iii) "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to take that action." *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (citation omitted).

Plaintiff asserts that he was "fired" from his work assignment on the inmate electrical maintenance crew when prison officials discovered that he had filed a lawsuit in the Mercer County Court of Common Pleas concerning the incidents which give rise to this lawsuit.

It is clear that a prisoner filing a grievance or a civil action in court is a protected activity under the First Amendment. *Milhouse v. Carlson*, 652 F.2d 371, 374 (3d Cir. 1981). It is also clear that "the termination of prison employment constitutes adverse action sufficient to deter the exercise of First Amendment rights, satisfying the second element of a retaliation claim at this stage of the litigation." *Wisniewski v. Fisher*, 857 F.3d 152 (3d Cir. 2017). The DOC Defendants do not address the third element. Rather, the DOC Defendants contend that the Amended Complaint fails to state a claim because the Amended Complaint fails to identify who,

specifically, was responsible for removing Plaintiff from his job and, thus, responsible for allegedly retaliating against him. Br. at 7.

In response, Plaintiff argues that Defendant Engstrom as the employment coordinator; Superintendent Thompson, Deputy Superintendent Woods, Bromley, Boggs, and Dellorso may have all contributed to the decision.[6] Plaintiff also argues that only through discovery will he be able to properly identify the defendants responsible for the decision to remove him from his employment.

The Court finds Plaintiff's response to be persuasive. While the Court acknowledges that Plaintiff does not identify the particular person(s) responsible for the decision to terminate his employment, at this stage of the case, Plaintiff is not in the position to present the requisite factual details to fully plead his claim. Accordingly, the Court recommends that this claim not be dismissed but rather should proceed to discovery.[7]

---

[6] In the Amended Complaint, Plaintiff did not mention Defendants Woods or Dellorso. *See* Amended Complaint, Fourth Cause of Action, ¶¶ 57 – 62. However, in his response to the motions to dismiss, he addresses the possible involvement of these two individuals. Our appellate court has instructed that when a prisoner appears pro se, the Court should "treat the factual allegations contained in [the prisoner's' responses [to a motion to dismiss] as though they were included in the complaint." *Baker v. Younkin,* No. 13-1580, 529 F. App'x 114, 115 n.2 (3d Cir. July 3, 2013) (citing *Lewis v. Att'y Gen. of U.S.*, 878 F.2d 714, 722 (3d Cir. 1989)).

[7] To the extent Plaintiff is raising a separate supervisory liability claim against Superintendent Thompson that rests on the premise that this official did not after-the-fact act favorably upon his grievance, this claim fails. An inmate cannot sustain a constitutional tort claim against prison supervisors based solely upon assertions that officials fails to adequately investigate or respond to past grievances. Inmates do not have a constitutional right to a prison grievance system. Consequently, dissatisfaction with a response to an inmate's grievances does not support a constitutional claim. *See Pressley v. Beard*, 266 F. App'x 216, 218 (3d Cir. 2008) (failure to take corrective action when grievances or investigations were referred to official is not a basis for § 1983 liability); *Cole v. Sobina*, No. 04-0099, 2007 WL 4460617, at *5 (W.D.Pa. Dec. 19, 2007) ("[M]ere concurrence in a prison administrative appeal process does not implicate a constitutional concern.").

4. *Claims Against the Medical Defendants*

    a. *Eighth Amendment Deliberate Indifference Claims*

The Amended Complaint, fairly construed, alleges failure to appropriately treat or respond to Plaintiff's serious medical needs. Plaintiff's claims against the Medical Defendants are brought under both the Eighth Amendment and state law medical malpractice tort law.

In the medical context, a constitutional violation under the Eighth Amendment occurs only when prison officials are deliberately indifferent to serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976). The standard is two-pronged, "[i]t requires deliberate indifference on the part of prison officials and it requires that the prisoner's medical needs be serious." *West v. Keve*, 571 F.2d 158, 161 (3d Cir. 1978). The necessary inquiry, therefore, is bifurcated: the medical need must be serious and the defendants must have exhibited deliberate indifference.

The parties do not dispute the "seriousness" of Plaintiff's medical need in this case. To demonstrate the deliberate indifference prong of *Estelle*, a plaintiff must show that the defendants were more than merely negligent in diagnosing or treating his or her serious medical condition. Mere medical malpractice or disagreement with the proper treatment of a medical condition cannot give rise to a violation of the Eighth Amendment. *White v. Napoleon*, 897 F.2d 103, 108 (3d Cir. 1990); *see also Rouse*, 182 F.3d at 197. The Court of Appeals for the Third Circuit has concluded that the deliberate indifference standard is met "when prison officials 1) deny reasonable requests for medical treatment, and the denial exposes the inmate to undue suffering or the threat of tangible residual injury, 2) delay necessary medical treatment for non-medical reasons, or 3) prevent an inmate from receiving recommended treatment for serious medical needs, or deny access to a physician capable of evaluating the need for treatment."

*Whooten v. Bussanich,* 248 F. App'x 324, 326-27 (3d Cir. 2007) (*citing Lanzaro*, 834 F.2d at 346-47); *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993).

(1)     Scott Morgan, M.D., Karen Feathers, and Richard Ellers

In the case *sub judice*, Plaintiff claims that the Medical Defendants violated his rights by their follow-up medical treatment, or lack thereof.   Specifically, Plaintiff alleges that his complaints of constant pain and discomfort were ignored and that he was never given his orthopedic shoes, although prescribed by both Dr. Stonestreet and Dr. Morgan.[8]   The Medical Defendants argue that Plaintiff has failed to allege sufficient facts so as to state a plausible claim for deliberate indifference towards his serious medical needs against each individual medical defendant.   Additionally, the Medical Defendants challenge this claim as a disagreement with the treatment decisions of his medical providers.   Plaintiff responds that "this is not a case of a simple disagreement to treatment."  Pl's Br. at 10. (ECF No. 47 at 14).   Rather, Plaintiff alleges that his complaints of pain were ignored and met with opposition.

Taking the facts as alleged in the Amended Complaint in the light most favorable to Plaintiff, it appears that both Dr. Stonestreet and Dr. Morgan prescribed orthopedic shoes for Plaintiff;  however,  the  prescribed  shoes  were  never  provided  to  Plaintiff  due  to  an "administrative denial" and Plaintiff was provided only gel inserts for his shoes.   The gel inserts provided no relief and Plaintiff informed Dr. Morgan on numerous occasions that he was in near constant pain and discomfort, especially when he was wearing his state-issued boots or had to stand for prolonged periods of time.   According to the Amended Complaint, Dr. Morgan ignored

---

[8]       In his response to the motion to dismiss, Plaintiff also states that Dr. Morgan, who is not an orthopedic specialist, should have followed the recommendations of Dr. Stonestreet, an orthopedic specialist.  P's Br. at 9.  To the extent Plaintiff disagrees with the course of treatment, such disagreement does not constitute an Eighth Amendment violation.  *Innis v. Wilson*, 34 F. App'x 454, 456 (3d Cir. 2009).

Plaintiff's complaints of pain and willfully refused to insist that the prescribed orthopedic shoes be given to Plaintiff.

The Court finds that at this early stage of the litigation and based upon Plaintiff's allegations, the Amended Complaint states a plausible Eighth Amendment deliberate indifference claim against Dr. Morgan to survive a motion to dismiss challenge.

It is a closer call with respect to Defendants Karen Feathers and Richard Ellers. According to the Medical Defendants, Ms. Feathers is the site administrator for Correct Care at SCI-Mercer and "works in what is essentially an administrative capacity - she is not a clinician and did not treat Plaintiff." And, according to the Medical Defendants, Richard Ellers is the Vice President for Correct Care's operations in Pennsylvania and did not have any involvement in Plaintiff's care. However, the Amended Complaint alleges that Defendant Feathers issued Plaintiff a pair of gel inserts and told him that "this is all we can give you." Amended Complaint at ¶ 34. Further, the Amended Complaint states that both Defendant Feathers and Defendant Ellers were part of the "medical staff" that denied the prescription for the orthopedic shoes. *Id.* at ¶ 53. The Court recognizes that discovery may well reveal that neither Defendant Feathers nor Defendant Ellers had any personal involvement in the alleged deprivation of Plaintiff's rights under the Eighth Amendment, but at this early stage of the litigation, the allegations of the Amended Complaint must be accepted as true and all reasonable inferences must be drawn in Plaintiff's favor. Therefore, the Court recommends that the motion to dismiss be denied as to any Eighth Amendment deliberate indifference claim against Defendant Feathers and Defendant Ellers.

(2)     Correct Care

Plaintiff also brings a corporate claim against Correct Care, the contracted agency of the DOC responsible for providing medical services to all prisoners within the DOC and for ensuing that its employees and staff are properly trained in the administration of medical services to all prisoners within the DOC.

i.     Res Judicata

The Medical Defendants move to dismiss the claims against Correct Care based on the doctrine of res judicata, or claim preclusion. The Medical Defendants argue that Plaintiff's claims are barred because Plaintiff "brought a nearly identical suit in the Court of Common Pleas of Mercer County, Pennsylvania."[9] Although res judicata is an affirmative defense, it may be raised in a motion to dismiss pursuant to Rule 12(b)(6). *Ggnsc Altoona Hillview LP v. Martz*, 2016 WL 502089 (W.D.Pa. Feb. 8, 2016) (citing *Tyler v. O'Neill*, 52 F. Supp. 2d 471, 473-74 (E.D.Pa. 1999) *aff'd sub nom*. *Tyler v. O'Neill*, 225 F.3d 650 (3d Cir. 2000)). With respect to their motion to dismiss based on res judicata, the Medical Defendants set forth the legal standard rooted in federal common law doctrine. (ECF No. 43 at11-12) ("Under federal law, the elements of res judicata or "claim preclusion" as it is often referred to, are four-fold . . . .).

However, the applicable doctrine here is one of state, not federal law. Federal courts are required to give state court judgments the same full faith and credit to which they would be entitled under state law. 28 U.S.C. § 1738; *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005); *In re Graves*, 33 F.3d 242, 247 (3d Cir. 1994). While federal common law

---

[9]     In his state court case, Plaintiff alleged that Correct Care and Dr. Morgan had violated the "administrative policies of the DOC." In the instant case, Plaintiff alleges that "the failure to properly train is an official policy, custom, or practice, tacitly held by Defendant Correct Solutions to arbitrarily deny medical services and reduce treatment whenever possible." (ECF No. 36 at ¶ 54).

has developed its own set of preclusion principles, if the decision allegedly precluding a later action was issued by a state court, then the federal courts must apply the preclusion principles developed by that state. *Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 548 (3d Cir. 2006) (citing *Lance v. Dennis*, 546 U.S. 459 (2006) ("Congress has directed federal courts to look principally to state law in deciding what effect to give state-court judgments.")); *see Gregory v. Chehi*, 843 F.2d 111, 116 (3d Cir. 1988).

As the Pennsylvania Supreme Court stated, "The doctrine of res judicata will preclude an action where the former and latter suits possess the following common elements: (1) identity of issues; (2) identity in the cause of action; (3) identity of persons and parties to the action; and (4) identify of the capacity of the parties suing or being sued." *Daley v. A.W. Chesterton, Inc.*, 37 A.3d 1175, 1189-90 (Pa. 2012). Pennsylvania's doctrine of res judicata does not sufficiently mirror the federal common law so as to obviate the need for briefing on this issue. Therefore, because the Court is not convinced that applying the doctrine is proper on the limited record before it, it is recommended that the motion to dismiss on this basis be denied without prejudice.

ii. *Monell* Claim

Plaintiff alleges, *inter alia*, that Correct Care failed to properly train its employees and that such failure to train "is an official policy, custom, or practice tacitly held by Defendant to arbitrarily deny medical services and reduce treatment wherever possible." Amended Complaint, at ¶ 55. The Medical Defendants argue that Plaintiff's *Monell* claim should be dismissed because Plaintiff has not sufficiently alleged that any of the alleged violations of his rights stemmed from a policy or custom of Correct Care.

In order to establish a viable §1983 claim against a private entity such as Correct Care, Plaintiff must allege that the entity had a policy, practice, or custom which caused the

constitutional violation he claims. To satisfy the pleading standard, Plaintiff not only must identify a custom or policy, he must specify what that custom or policy was. *McTernan v. City of York, PA*, 564 F.3d 636, 658-59 (3d Cir. 2009).

The Amended Complaint in this case is largely bereft of any well-pleaded factual allegations which would satisfy the requirements of the law in this area. These requirements are exacting and precise. When a claim is brought against a corporate health care provider additional legal considerations come into play beyond those generally prescribed for constitutional tort liability. It is well settled that "[a corporate health care provider] is not liable for constitutional violations committed by its employees, unless [the company] has adopted a policy, practice or custom that caused the constitutional violations alleged." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).[10]

Thus, to sustain a claim against a corporate entity, a plaintiff must "identify a . . . 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997). This custom must be "so widespread as to have the force of law." *Id*. at 404. The plaintiff must further "allege that a 'policy or custom' of [the defendant] was the 'moving force' behind the [constitutional] violation." *Grayson v. Mayview State Hosp.*, 293 F.3d 102, 107 (3d Cir. 2002) (citing *Brown*, 520 U.S. at 404).

A corporate entity can also be held liable on the basis of failure to train, but only when "that failure amounts to 'deliberate indifference . . . [of the constitutional] rights of persons. . . .'" *Woloszyn v. County of Lawrence,* 396 F.3d 314, 324 (3d Cir. 2005) (citations omitted). There must also be a causal nexus, in that the " 'identified deficiency in [the] training program must be

_____

[10]    "*Monell* applies not only municipalities, but also extends to private organizations faced with Section 1983 liability for actions under color of state law." *Kauffman v. Pa. Soc'y for the Prevention of Cruelty to Animals*, 766 F. Supp.2d 555, 561-62 (E.D.Pa. 2001).

closely related to the ultimate [constitutional] injury.'" *Id.* at 325 (citations omitted).  Therefore, analysis of a claim under *Monell* requires separate analysis of two distinct issues:  "(1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the [corporate defendant] is responsible for that violation."  *Collins v. City of Harker Heights, Texas*, 503 U.S. 115, 120 (1992).

Here, while the Court finds that Plaintiff has pleaded sufficient facts to proceed forward against the individual defendants, the Court concludes that Plaintiff has not alleged sufficient facts to allow the Court to conclude that his treatment, or lack thereof, was part of a pervasive corporate policy or custom which directly caused the constitutional violations about which he complains.  Plaintiff has not alleged any policy of inadequate training.  Nor has he identified what training Correct Care should have put into place in order to avoid a constitutional violation. The bare allegation that Correct Care failed to properly train its employees as part of a program or custom offers nothing more than a legal conclusion to which the Court need not accept as true. *See Giamboi v. Prison Health Servs.*, 2011 WL 5322769, at *11 (M.D.Pa. 2011) ("[T]he allegation that defendants PHS and PHS Correctional . . . had a policy or custom of inadequate training in dealing with prisoners with severe medical problems is also conclusory.  The complaint does not allege in what regard or how the training was inadequate.")  Plaintiff has not alleged sufficient factual averments "to allow[] the court to draw the reasonable inference that [Correct Care]" has the customs or policies which he claims.  *Iqbal,* 556 U.S. at 678; *see also Abraham v. Digugleilmo*, No. CIV.A. 06-0058, 2010 WL 2136600, at *5 (E.D.Pa. May 25, 2010) ("Specific details of the alleged injurious policies are not necessary at this stage, but more is required than the bald statement that injurious policy exists.")

Because the Amended Complaint does not adequately allege a claim of corporate misconduct in accordance with *Monell* and its progeny, the Court recommends that the corporate liability claim against Correct Care be dismissed. However, it is also recommended that Plaintiff be granted leave to amend his *Monell* claim, but only to the extent that he can allege sufficient facts to allow the Court to conclude that his treatment, or lack thereof, was part of a pervasive corporate policy or custom, including a failure to train, which directly caused the constitutional violations about which he complains.

     b.     *Medical Malpractice / Corporate Negligence Claims*

The Medical Defendants argue that the Amended Complaint fails to sufficiently plead a cause of action for medical malpractice. To make out a claim for medical malpractice under Pennsylvania law, a plaintiff must show that: (1) the medical professional owed the patient a duty of care; (2) the medical professional breached that duty; (3) the breach caused the harm suffered; and (4) the damages alleged were a direct result of the harm. *See Toogood v. Owen J. Rogal, D.D.S., P.C.*, 824 A.2d 1140, 1145 (Pa. 2003).

First, the Medical Defendants contend that Plaintiff has failed to allege that the Medical Defendants breached the standard of care and has failed to identify any damages that were caused to him as a result of Dr. Morgan's purported negligence. ECF No. 43 at 18. Second, they contend that these claims must be dismissed as Plaintiff has failed to timely file a Certificate of Merit against Dr. Morgan and Correct Care,[11] which is required to support his claims under

---

[11] The plain language of Rule 1042.3(b)(2) directs that separate COMs must be filed where a plaintiff is proceeding on both direct and vicarious liability theories against one defendant, although it permits them to be combined in a single document. *Stroud v. Abington Memorial Hosp.*, 546 F. Supp. 238 (E.D.Pa. 2008).

Pennsylvania law.[12]  Plaintiff did not address these arguments in his response in opposition so it is not clear whether he has abandoned these claims.  See ECF No. 47.[13]  In an abundance of caution, however, the Court will proceed to address the Medical Defendants' argument.

Assuming *arguendo* that the Amended Complaint adequately alleges a claim for medical malpractice and corporate negligence, it appears that Plaintiff has not fulfilled the requirements of Pennsylvania Rule of Civil Procedure 1042.3(a), which requires the filing of a valid certificate of merit ("COM") along with any malpractice or medical negligence claim within sixty days after the filing of the complaint.   The requirements of Rule 1042.3(a) are deemed substantive in nature and, therefore, federal courts in Pennsylvania will apply this prerequisite when assessing the merits of a medical malpractice claim.  *Liggon-Reading v. Estate of Sugarman*, 659 F.3d 258 (3d Cir. 2011).   Additionally "one of Pennsylvania's conditions precedent to dismissing an action for failure to comply with the COM requirement, fair notice to a plaintiff, is also substantive law," *Schmigel v. Uchal*, 800 F.3d 113, 115 (3d Cir. 2015), and, therefore, also must be applied in federal court.  *Id.* at 124.

Under the notice provisions, a Pennsylvania malpractice defendant may dismiss an action only if the following conditions are met:

> (1) there is not a pending motion (a) for determination that a COM is unnecessary in the first place or (b) seeking to extend the time to file a COM; (2) a COM was not filed before dismissal was sought; (3) the defendant has attached proof that he served notice of the deficiency upon the plaintiff; and is relevant here, (4) thirty

---

[12]    Where a plaintiff seeks to recover based on a theory of respondeat superior liability, certificates must be filed as to each professional defendant for whose behavior a corporate defendant allegedly bears vicarious liability.  *See Rostock v. Anzalone,* 904 A.2d 945, 946 (Pa. Super. Ct. 2006); *Stroud*, 546 F. Supp.2d at 248.

[13]    It is not clear from the Amended Complaint whether Plaintiff is intending to bring a medical malpractice claim against Defendants Feathers or Ellers, or even if such a claim would be appropriate.   Defendants did not address these two individuals in their brief and only argue generally that "Mr. Sloan has failed to state that Moving Defendants breached the standard of care."  Br. at 18 (emphasis added). (ECF No. 43).  Assuming that Plaintiff intended to bring a medical malpractice claim against these two defendants, the same analysis applies.

days has elapsed between the notice of deficiency and the defendant's attempt to terminate the action. Pa.R.C.P. No. 1042.7(a)(1)-(4).

*Id.* at 118. In the instant case, the Medical Defendants neither have addressed the notice requirement nor have they attached proof that Plaintiff was served notice of the deficiency. Absent evidence that the Medical Defendants have fulfilled their notice responsibilities, the Court must recommended that the Moving Defendants' motion to dismiss the medical malpractice / corporate negligence claims be denied without prejudice.

## III.    CONCLUSION

For all the above reasons, it is respectfully recommended that the pending motions to dismiss be granted in part and denied in part. Specifically, it is recommended that the motion to dismiss filed by the DOC Defendants be granted as follows:

1.      All claims against SCI-Mercer and the Department of Corrections be dismissed with prejudice; and

2.      The Eighth Amendment claims against Defendants Thompson, Woods, and Sullenberger be dismissed with prejudice.

It is further recommended that the motion to dismiss filed by the DOC Defendants be denied as follows:

1.      Plaintiff's Eighth Amendment claims against Bromley, Boggs, and Dellorso should be allowed to proceed to discovery; and

2.      Plaintiff's retaliation claims against Engstrom, Thompson, Bromley, Boggs, and Dellorso also should be allowed to proceed to discovery.

It is further recommended that the Medical Defendants' motion to dismiss be granted as follows:

1. The motion be granted on Plaintiff's Fourteenth Amendment claims and leave to amend be denied as any such amendment would be futile.

2. The motion be granted with respect to Plaintiff's *Monell* claim against Correct Care. However, it is also recommended that Plaintiff be granted leave to amend his *Monell* claim, but only to the extent that he can allege sufficient facts to allow the Court to conclude that his treatment, or lack thereof, was part of a pervasive corporate policy or custom, including a failure to train, which directly caused the constitutional violations about which he complains.

It is further recommended that the Medical Defendants' motion to dismiss be denied as follows:

1. The motion be denied without prejudice to Defendants' claims of res judicata;

2. The motion be denied with respect to all Eighth Amendment deliberate indifference claims against Defendants Morgan, Feathers, and Ellers; and

3. The motion be denied without prejudice with respect to Plaintiff's medical malpractice / corporate negligence claims.

Any party is permitted to file Objections to this Report and Recommendation to the assigned United States District Judge. In accordance with 28 U.S.C. § 636(b), Fed.R.Civ.P. 6(d) and 72(b)(2), and LCvR 72.D.2, Plaintiff, because he is a non-electronically registered party, may file objections to this Report and Recommendation by **September 5, 2017**, and Defendants, because they are electronically registered parties, may file objections by **August 31, 2017**. The

parties are cautioned that failure to file Objections within this time frame "will waive the right to appeal." *Brightwell v. Lehman,* 637 F.3d 187, 193 n. 7 (3d Cir. 2011).


Dated:  August 16, 2017



                                        s/ Cynthia Reed Eddy
                                        Cynthia Reed Eddy
                                        United States Magistrate Judge


cc:      JOHN SLOAN
         KH 0937
         SCI Mercer
         801 Butler Pike
         Mercer, PA 16137
         (via U.S. First Class Mail)

         Yana L. Warshafsky
         Office of the Attorney General
         (via ECF electronic notification)

         Meghan K. Adkins
         Weber Gallagher Simpson Stapleton Fires & Newby
         (via ECF electronic notification)

         Samuel H. Foreman
         Weber Gallagher Simpson Stapleton Fires & Newby
         (via ECF electronic notification)